UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN DOE,

               Plaintiff,

v.                                         Case No. 20-CV-12997
                                         Honorable Thomas L. Ludington

NORTHERN LAKES COMMUNITY
MENTAL HEALTH AUTHORITY,
CHRISTINE M. SMITH,

               Defendants.

_____/

**ORDER GRANTING DEFENDANT NORTHERN LAKES COMMUNITY MENTAL HEALTH AUTHORITY'S MOTION TO DISMISS AND MOTION FOR LEAVE TO FILE EXCESS PAGES FOR REPLY BRIEF IN SUPPORT**

On November 6, 2020, Plaintiff John Doe filed a complaint against Defendants Northern Lakes Community Mental Health Authority ("NLCMHA") and Christine M. Smith alleging that he was sexually abused in violation of federal and state law. ECF No. 1. On December 4, 2020, NLCMHA moved to dismiss the Compliant for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 8. Plaintiff responded on December 18, 2020. ECF No. 10. Shortly thereafter, NLCMHA concurrently filed a reply brief and motion for leave to file excess pages in support. ECF Nos. 12, 13. Defendant Smith has not moved to dismiss but has instead filed an answer to the Complaint. ECF No. 11. For reasons explained below, Defendant NLCMHA's Motion to Dismiss and Motion for Leave to File Excess Pages will be granted.

**I.**

Plaintiff, a resident of Ogemaw County, suffers from major depressive disorder and anxiety disorder. ECF No. 1 at PageID.3. In 2007, he began receiving mental health services from Defendant NLCMHA, "a multi-county community mental health authority created pursuant to

MCL 330.1205 of the Michigan Public Health Code." *Id.* at PageID.2. In addition to mental health services, Defendant NLCMHA also provided Plaintiff with housing assistance. *Id.* at PageID.3.

Around midway through 2017, Plaintiff began receiving mental health services from Defendant Smith, a licensed social worker employed by NLCMHA. *Id.* Plaintiff claims that by the fall of 2017, Defendant Smith was behaving in a "sexually suggestive manner towards [him]," sending him gifts and nude images of herself. *Id.* at PageID.3–4. Plaintiff alleges that on several occasions, he awoke at home to find Defendant Smith in his bed. *Id.* at PageID.4. When he asked how she got there, "Defendant Smith would change the subject and tell Plaintiff that she wanted him to feel loved." *Id.*

According to Plaintiff, this pattern of sexual harassment—and, eventually, sexual abuse—continued until July 2018, when he disclosed Defendant Smith's behavior to Sean Kelly, "a peer support specialist employed by Defendant NLCMHA." *Id.* at PageID.5. A subsequent investigation by Defendant NLCMHA concluded that, according to Michigan law, Defendant Smith had sexually abused Plaintiff. *Id.* at PageID.5–6. The Complaint suggests that Defendant Smith is no longer employed with Defendant NLCMHA. *Id.* at PageID.5 (referring to Defendant Smith as "now-former NLCMHA case manager").

Based on the foregoing, Plaintiff alleges seven counts: quid pro quo and hostile environment sexual harassment in violation of the Equal Protection Clause of the Fourteenth Amendment (Counts I and II); violation of the right to bodily integrity under the Fourteenth Amendment (Count III); abuse in violation of M.C.L. § 330.1722 (Count IV); quid pro quo and hostile environment sexual harassment in violation of Michigan's Elliot-Larsen Civil Rights Act (Counts V and VI); and assault and battery (Count VII). ECF No. 1 at PageID.7–25. Count VII is alleged only against Defendant Smith.

## II.

As mentioned previously, Defendant NLCMHA filed its Reply Brief along with a motion seeking a four-page extension of the Reply Brief. ECF Nos. 12, 13. Defendant NLCMHA explains that Plaintiff's Response Brief relies on facts and documents not attached to or referenced in the Complaint. ECF No. 12 at PageID.141. Defendant NLCMHA is presumably referring to Plaintiff's reliance on public records relating to Defendant Smith's driving record and alcohol dependency, discussed in Section IV.A.1., *infra*. The preferred method of seeking a page extension is to file a motion for leave to file excess pages before filing the brief in question so that the Court may first rule on the motion. Nonetheless, Defendant NLCMHA has demonstrated good cause for the four-page extension. The Motion for Leave to File Excess Pages will be granted.

## III.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679–79 (internal quotation marks and citation omitted).

## IV.

### A.

Counts I, II, and III are brought pursuant to 42 U.S.C. § 1983. "Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The parties seem to agree that Defendant NLCMHA is a local governmental unit rather than a state agency.[1] This position appears consistent with Michigan law. *See* M.C.L. § 330.1100a(16) (defining "community mental health authority" as "a separate legal public governmental entity created under [M.C.L. § 330.1205] to operate as a community mental health services program"); *see also In re Blackshear*, 686 N.W.2d 280, 286 (Mich. Ct. App. 2004) (holding that community mental health authority was legally distinct from Michigan Department of Community Health); *Greene v. Crawford Cty.*, No. 18-11008, 2020 WL 3469172, at *11–12 (E.D. Mich. June 25, 2020) (holding that Defendant NLCMHA was not an "arm of the state" for purposes of sovereign immunity). Accordingly, Defendant NLCMHA will be treated as a municipality for purposes of § 1983.

"[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978)) (emphasis original). "To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas*, 398 F.3d 426, 429 (6th Cir.

---

[1] A community mental health authority may only be established through the enabling resolution of a county board of commissioners. M.C.L. § 330.1205(1). Defendant NLCMHA serves six counties:  Crawford, Grand Traverse, Leelanau, Missaukee, Roscommon, and Wexford. ECF No. 1 at PageID.2

2005). To prove an unlawful custom or policy, "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.*

Plaintiff alleges that his Fourteenth Amendment rights were violated as a result of Defendant NLCMHA's (1) "policy of inadequate training or supervision of its case managers," and (2) "custom of tolerance or acquiescence of federal rights violations." ECF No. 1 at PageID.9. Neither theory is adequately pled.

**1.**

To prevail on a failure to train or supervise theory, "the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. In other words, the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be plainly obvious." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (internal quotation marks and citations omitted).

Plaintiff does not describe the training or supervision that Defendant NLCMHA provides to case managers like Defendant Smith. He instead suggests that the facts outlined in the Complaint "demonstrate a plausible claim that Defendant NLCMHA failed to supervise Defendant Smith or subject her to greater supervision in light of foreseeable consequences that would result from the lack of such supervision." ECF No. 10 at PageID.95. Specifically, Plaintiff relies on (1) the

frequency and duration of the abuse and (2) public records showing that Defendant Smith was arrested for operating while intoxicated in December 2017, diagnosed with alcohol dependency, and sentenced to 120 days probation after operating while intoxicated again in January 2018. *Id.* at PageID.95–96.

In *Pesci v. City of Niles*, 674 F. App'x 544 (6th Cir. 2017), an inmate alleged that the City of Niles failed to supervise an arresting officer who sexually abused him. The inmate pointed to the officer's record of bad conduct as evidence that the City was deliberately indifferent. *Id.* at 547. The Sixth Circuit, however, held that "none of [the officer's] actions put the City on notice that he had the propensity to commit sexual assault." *Id.* "Three of the four incidents identified by [the arrestee]—passing bad checks, speeding and driving on a suspended license, and lying to a superior officer—had nothing to do with this kind of incident." *Id.* Indeed, "[t]hey were nonviolent and did not raise the possibility that [the officer] might commit a far more serious crime." *Id.* Even a prior complaint of violence was insufficient. *Id.* at 547–48.

Like the inmate in *Pesci*, Plaintiff relies on a record of bad conduct that is wholly unrelated to the behavior at issue here. Alcohol-related driving offenses bear no logical relationship to sexual abuse. Accordingly, there is no reason to believe that Defendant NLCMHA—assuming that it knew of Defendant Smith's driving record—was deliberately indifferent to a "plainly obvious" risk of sexual abuse. *Cf. Mize v. Tedford*, No. 08-CV-10660-DT, 2009 WL 1508373, at *14 (E.D. Mich. May 29, 2009) ("[T]o find that the officers . . . were unsupervised and derelict in their duties as officers of the law is not the same as to find that the 'plainly obvious' result of the lack of supervision was the violent sexual assault on Plaintiff."), *aff'd*, 375 F. App'x 497 (6th Cir. 2010).

Plaintiff's reliance on the frequency and duration of the abuse is similarly misplaced. The fact that Defendant Smith abused Plaintiff over an extended period of time is irrelevant to whether

Defendant NLCMHA disregarded known or obvious risks of sexual abuse. In effect, Plaintiff proposes that Defendant NLCMHA be held liable for creating the opportunity for abuse, but "[b]eing able to prove opportunity is not the same thing as being able to prove that the . . . lack of supervision was a 'moving force' behind the deprivation." *Campbell v. Anderson Cty.*, 695 F. Supp. 2d 764, 775 (E.D. Tenn. 2010). Accordingly, Plaintiff has not plausibly alleged a failure-to-supervise theory.

**2.**

"A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). Where, as here, Plaintiff alleges that Defendant NLCMHA had a custom of tolerating or acquiescing in sexual abuse, he must show:

(1) the existence of a clear and persistent pattern of sexual abuse by [Defendant NLCMHA's] employees;

(2) notice or constructive notice on the part of [Defendant NLCMHA];

(3) [Defendant NLCMHA's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and

(4) that [Defendant NLCMHA's] custom was the 'moving force' or direct causal link in the constitutional deprivation.

*Doe*, 103 F.3d at 508. Plaintiff alleges no widespread pattern of abuse or any other fact that would support a custom-of-inaction theory. To the contrary, the Complaint indicates that Defendant NLCMHA promptly investigated Defendant Smith after her abusive behavior was disclosed. *See* ECF No. 1 at PageID.5–6. These facts hardly illustrate tacit approval or deliberate indifference by Defendant NLCMHA.

Based on the foregoing, Plaintiff has failed to plausibly allege a policy or custom for which Defendant NLCMHA could be held liable under § 1983. Accordingly, Counts I, II, and III will be dismissed.

**B.**

Count IV alleges that Plaintiff was abused in violation of the Michigan Public Health Code. ECF No. 1 at PageID.17–19. The Code provides, in relevant part,

(1) A recipient of mental health services shall not be subjected to abuse or neglect.

[…]

(3) A recipient of mental health services who is abused or neglected has a right to pursue injunctive and other appropriate civil relief.

M.C.L. § 330.1722. Courts of this circuit have recognized a private cause of action for abused recipients arising under M.C.L. § 330.1722. *Lanman v. Hinson*, 448 F. Supp. 2d 844, 858–59 (W.D. Mich. 2006), *aff'd in part, rev'd in part*, 529 F.3d 673 (6th Cir. 2008).

Defendant NLCMHA argues that it is immune from suit under § 330.1722 by virtue of Michigan's Governmental Tort Liability Act (the "GTLA"), M.C.L. § 691.1401 *et seq*. The GTLA shields a "governmental agency [] engaged in the exercise or discharge of a governmental function" from tort liability, subject to several statutory exceptions. M.C.L. § 691.1407(1).

In *Dockweiler v. Wentzell*, 425 N.W.2d 468 (Mich. Ct. App. 1988), a recipient of mental health services brought an abuse claim under § 330.1722 against Allegan County Mental Health Services, Inc. ("ACMHS"). The recipient alleged that she had been sexually harassed and assaulted by an ACMHS psychologist. *Id.* at 469. The trial court granted ACMHS summary disposition on the abuse claim because of governmental immunity. *Id.* at 471. The Michigan Court of Appeals affirmed, explaining, "[A] tort claim for damages does not constitute 'appropriate civil relief' under [§ 330.1722] against the governmental unit and agency in this action because the unit and

-8-

agency are entitled to the protection of governmental immunity and [§ 330.1722] is not an exception to such immunity." *Id.*

Like ACMHS, Defendant NLCMHA is a governmental agency under the GTLA and was discharging a governmental function at the time of the alleged abuse. *See* M.C.L. §§ 691.1401(a), (e) (defining "governmental agency" to include "a district or authority authorized by law or formed by 1 or more political subdivisions"). As a result, Count IV would seem to be precluded by governmental immunity.

Plaintiff asks this Court to look beyond *Dockweiler*. First, he argues that *Dockweiler* is nonbinding because of Michigan Court Rule 7.215(J)(1), which states, "A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." *Dockweiler*, as Plaintiff notes, was decided in 1988. However, MCR 7.215(J) is expressly concerned with the "resolution of conflicts in court of appeals decisions," and no such conflict is apparent here. Indeed, *Dockweiler* has never been overruled. Furthermore, when applying Michigan law to an issue not decided by the Michigan Supreme Court, this Court is bound to consider "relevant data," including "decisions of the state appellate courts." *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995). MCR 7.215(J)(1) does not seem to alter the analysis.

Second, Plaintiff argues that "when one reads the Michigan [Public] Health Code *in pari materia* with [the GTLA], it becomes clear that the Michigan Legislature pulled back the veil of immunity." ECF No. 10 at PageID.97. He relies on the definition of "recipient" in § 330.1100(c)—which includes persons treated by community mental health authorities, like Defendant NLCMHA—as well as three cases where Michigan courts found governmental immunity

exceptions in similar statutes. *Id.* at PageID.98–100. In each case he cites, however, the statute at issue specifically addressed the scope of governmental immunity. *See Anzaldua v. Band*, 578 N.W.2d 306, 315 (Mich. 1998) (Whistleblowers' Protection Act, M.C.L. § 15.361 *et seq.*); *Manning v. City of Hazel Park*, 509 N.W.2d 874, 881 (Mich. Ct. App. 1993) (Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.*); *Malcolm v. City of E. Detroit*, 468 N.W.2d 479, 483 (Mich. 1991) (Emergency Medical Services Act, M.C.L. § 333.20701 *et seq.*). Section 330.1722, by contrast, creates only the "right to pursue injunctive and other appropriate civil relief," which the Michigan Court of Appeals decided does not include a tort claim against a governmental agency. *Dockweiler*, 425 N.W.2d at 471. Plaintiff advances no good reason to second-guess that decision.

Plaintiff alternatively argues that his abuse claim meets the "medical treatment" exception of the GTLA. ECF No. 10 at PageID.101. The relevant section states,

> This act does not grant immunity to a governmental agency or an employee or agent of a governmental agency with respect to providing medical care or treatment to a patient, except medical care or treatment provided to a patient in a hospital owned or operated by the department of community health or a hospital owned or operated by the department of corrections and except care or treatment provided by an uncompensated search and rescue operation medical assistant or tactical operation medical assistant.

M.C.L. § 691.1407(4). The Michigan Court of Appeals has extended this exception to mental health treatment. *McLean v. McElhaney*, 798 N.W.2d 29, 33–35 (Mich. Ct. App. 2010). Even so, "statutory exceptions [to the GTLA] are to be narrowly construed." *Maskery v. Bd. of Regents of Univ. of Michigan*, 664 N.W.2d 165, 167 (Mich. 2003).

Defendant NLCMHA contends that the alleged abuse does not meet the exception because it was not part of the "medical care or treatment" that it provided to Plaintiff. ECF No. 12 at PageID.148. Plaintiff, in response, argues for a more expansive view of the exception, noting that Michigan courts have refused to confine it to medical malpractice. ECF No. 10 at PageID.101. In

*Musulin v. Univ. of Michigan Bd. of Regents*, 543 N.W.2d 337 (Mich. Ct. App. 1995), the plaintiff was visiting her son at the University of Michigan Medical Center when she slipped and fell on a foreign substance in the hallway. *Id.* at 337–38. The Michigan Court of Appeals held that she could maintain a negligence action against the University based under the prior version of M.C.L. § 691.1407(4), which stated, "This act does not grant immunity to a governmental agency with respect to the ownership or operation of a hospital." *Musulin*, 543 N.W.2d at 338. The court reasoned that "the plain language of the statute does not support [the] argument that only medical malpractice claims fall within the public hospital exception." *Id.* at 339.

While Defendant NLCMHA is correct that § 691.1407(4) has since been amended, the Michigan Court of Appeals continues to allow ordinary negligence actions against public healthcare facilities where the alleged negligence occurred during the course of medical treatment. *See*, *e.g.*, *Estate of Falarski by Falarski v. Dep't of Military & Veterans Affairs*, No. 343494, 2019 WL 1211880, at *3 (Mich. Ct. App. Mar. 14, 2019) (Alzheimer's patient injured after falling in defendant care facility), *appeal denied sub nom. Falarski v. Dep't of Military & Veterans Affairs*, 931 N.W.2d 310 (Mich. 2019); *In re Estate of Ball*, No. 314861, 2014 WL 4214871, at *3 (Mich. Ct. App. Aug. 26, 2014) (Alzheimer's patient assaulted after wandering into another patient's room in defendant care facility).

In this case, however, Plaintiff is not alleging that Defendant NLCMHA negligently rendered mental health services, but that Defendant Smith intentionally abused him. In fact, Count IV only mentions Defendant NLCMHA to note that Plaintiff would qualify as a "recipient" for purposes of § 330.1722. ECF No. 1 at PageID.17–18. Accepting Plaintiff's theory as pled would dramatically expand an exception that this Court is bound to narrowly construe. *See Maskery*, 664 N.W.2d at 167. Accordingly, Defendant NLCMHA enjoys governmental immunity from an abuse

-11-

claim under § 330.1722, notwithstanding the medical treatment exception under § 691.1407(4).

Count IV will be dismissed.

### C.

Counts V and VI allege that Defendant was sexually harassed in violation of Michigan's

Elliot-Larsen Civil Rights Act (the "ELCRA"), M.C.L. § 37.2101 *et seq.* ECF No. 1 at PageID.20–

24. The ELCRA prohibits "[d]eny[ing] an individual the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of a place of public accommodation

or public service because of religion, race, color, national origin, age, sex, or marital status."

M.C.L. § 37.2302(a). The ELCRA further provides,

> (i) Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
>
> (*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

M.C.L. § 37.2103(i). "The first two subdivisions of MCL 37.2103(i) describe quid pro quo sexual

harassment, while the third subdivision refers to hostile-environment sexual harassment." *Hamed*

*v. Wayne Cty.*, 803 N.W.2d 237, 244 (Mich. 2011). Plaintiff alleges both quid pro quo (Count V)

and hostile-environment sexual harassment (Count VI). ECF No. at PageID.20–24. The elements

of each theory are similar.

> A plaintiff alleging quid pro quo sexual harassment affecting public services must show by a preponderance of the evidence (1) that he or she was subjected to any of the types of unwelcome sexual conduct or communication described in the statute and (2) that the public service provider or the public service provider's agent made submission to the proscribed conduct a term or condition of obtaining public services or used the plaintiff's submission to or rejection of the proscribed conduct as a factor in a decision affecting his or her receipt of public services.

*Hamed*, 803 N.W.2d at 244. For a hostile-environment claim, the plaintiff must prove that:

> (1) [he] belonged to a protected group;

> (2) [he] was subjected to communication or conduct on the basis of sex;

> (3) [he] was subjected to unwelcome sexual conduct or communication;

> (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the [public service] or created an intimidating, hostile, or offensive [public service] environment; and

> (5) respondeat superior.

*See Radtke v. Everett*, 501 N.W.2d 155, 162 (Mich. 1993) (applying elements in context of employment discrimination); *see also Neal v. Dep't of Corr.*, No. 285232, 2009 WL 187813, at *2 (Mich. Ct. App. Jan. 27, 2009) (applying same elements in hostile environment action by female inmates against correctional facility).

Count V and VI must be dismissed with respect to Defendant NLCMHA, even if Plaintiff has a prima facie sexual harassment claim against Defendant Smith. "When the harassment was committed by an agent and the plaintiff is pursuing a civil rights claim against the principal, as in this case, a court must always determine the extent of the employer's vicarious liability . . . ." *Hamed*, 803 N.W.2d at 244 (internal quotation marks omitted). "Thus, if a defendant is not vicariously liable for the acts of its agent under traditional principles of respondeat superior, the plaintiff's claim under the [ELCRA] fails as a matter of law." *Id.* "Under the doctrine of respondeat superior, the general rule is that an employer is not liable for the torts intentionally or recklessly

-13-

committed by an employee when those torts are beyond the scope of the employer's business." *Zsigo v. Hurley Med. Ctr.*, 716 N.W.2d 220, 223 (Mich. 2006).

In *Hamed*, an inmate sought to hold Wayne County and the Wayne County Sheriff's Department liable for quid pro quo sexual harassment after she was sexually assaulted by a Wayne County Sheriff's Deputy. *Id.* at 241–42. Relying on the doctrine of respondeat superior, the Michigan Supreme Court held that the County and County Sherriff's Department could not be vicariously liable because the assault was "an independent action accomplished solely in furtherance of [the deputy's] own criminal interests" and therefore "beyond the scope of his employment." *Id.* at 244–245. While the Court noted that an employer may be vicariously liable for criminal acts that are reasonably foreseeable, the deputy's prior record of bad conduct—including previous violence against an inmate—"did not put defendants on reasonable notice that [the deputy] would sexually assault an inmate." *Id.* at 246–47.

Accepting the allegations of the Complaint as true, Defendant Smith's actions were criminal and plainly beyond the scope of her employment as a licensed social worker. Furthermore, as discussed in Section IV.A.1., *supra*, Defendant Smith's prior record did not render the alleged abuse foreseeable. Plaintiff does not argue otherwise but claims—for the first time in his response brief—that Defendant NLCMHA owed a duty to protect him by virtue of the "special relationship" between patients and mental health providers at common law. ECF No. 10 at PageID.105. Plaintiff thus concludes that Defendant NLCMHA can be held liable for violating the duty to protect regardless of *Hamed*.

Plaintiff's argument is uncompelling for two reasons. First, he identifies no authority for the proposition that an employer may be held liable under the ELCRA for breaching the duty to protect. Both cases relied upon for establishing the common law duty to protect involve tort claims

unrelated to the ELCRA. *See Murdock v. Higgins*, 559 N.W.2d 639, 643 (Mich. 1997) (negligence action against county supervisors arising from sexual assault of teenager); *Dawe v. Dr. Reuven Bar-Levav & Assocs., P.C.*, 780 N.W.2d 272, 274 (Mich. 2010) (negligence action against psychiatrists arising from deadly shooting during group therapy). Second, assuming Plaintiff's theory were relevant to the ELCRA, the Complaint is devoid of any allegations regarding how Defendant NLCMHA breached the duty to protect.

Plaintiff also suggests that Defendant NLCMHA could be liable under the "aided-by-agency" exception to respondeat superior. ECF No. 10 at PageID.105–06. The aided-by-agency exception applies where the agent "was aided in accomplishing the tort by the existence of the agency relation." *Zsigo*, 716 N.W.2d 220, 223 (Mich. 2006) (quoting Restatement (Second) of Torts § 219(2)(d)). According to Plaintiff, "Defendant NLCMHA aided Defendant Smith by its agency relationship and giving her authority over Plaintiff." ECF No. 10 at PageID.107. In *Hamed*, the Michigan Supreme Court rejected a similar argument from the inmate and held that the "aided-by-agency exception is not a part of [Michigan's] common law."[2] *Hamed*, 803 N.W.2d at 252. To hold otherwise, the Court warned, would "effectively abolish the doctrine of respondeat superior in quid pro quo civil rights cases affecting public services and would result in the imposition of strict liability on governmental entities." *Id.* at 254.

Based on the foregoing, Plaintiff has failed to plausibly allege quid pro quo or hostile environment sexual harassment against Defendant NLCMHA. Counts V and VI will therefore be dismissed.

---

[2] Even before *Hamed* was decided, Michigan courts refused to apply the aided-by-agency exception where the basis for doing so was the agency relationship itself. *See Salinas v. Genesys Health Sys.*, 688 N.W.2d 112, 115 (Mich. Ct. App. 2004) ("An employee is not aided in accomplishing the tort by the existence of the agency relation, under the Restatement exception, just because of the mere fact that an employee's employment situation may offer an opportunity for tortious activity . . . .") (internal quotation marks omitted).

-15-

**V.**

Accordingly, it is **ORDERED** that Defendant Northern Lakes Community Mental Health Authority's Motion to Dismiss, ECF No. 8, is **GRANTED**. Defendant Northern Lakes Community Mental Health Authority will be **DISMISSED**.

It is further **ORDERED** that Defendant Northern Lakes Community Mental Health Authority's Motion to File Excess Pages for Reply Brief in Support, ECF No. 13, is **GRANTED**.


Dated: February 2, 2021                                    s/Thomas L. Ludington
                                                           THOMAS L. LUDINGTON
                                                           United States District Judge